Alfred Clayton, Jr.
Bliss, Wilkens & Clayton
500 L Street, Suite 200
Anchorage, AK 99501
Telephone:  (907) 276-2999
Facsimile:  (907) 276-2956
E-mail:  atc@bwclawyers.com

Attorneys for Plaintiff
     Allstate Indemnity Company


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE


| | | |
|---|---|---|
| ALLSTATE INDEMNITY COMPANY, an Illinois Corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:04-CV-246-TMB |
| v. | ) ) | |
| SALLY FIELDER, and DANIEL E. LIBBEY, as personal representative of the ESTATE OF JULIE MENEREY, | ) ) ) ) ) | |
| Defendants. | ) ) | |

_____)


**ALLSTATE'S OPPOSITION
TO ESTATE'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION**

The pleadings in this case disclosed an active case and
controversy.  <u>See</u> Docket 42 at 4-6.  Nevertheless, the Estate has
argued no less than three times that because Sally Fielder is a
stranger to the policy that no "controversy" exists between
Allstate and its insured.

The "stranger to the policy" argument disregards the essential purpose of Allstate's lawsuit which was to eliminate controversy so that Allstate could obtain a full release of Fielder's tort claims against the Estate by paying the policy limits.  The Estate confirmed the existence of the controversy when it refused to stipulate that Allstate's exposure was limited to the policy limits.[1]  Even the defense verdict in the tort case did not terminate the Estate's exposure to Sally Fielder's liability claim.[2]

The fact that Allstate is on the verge of obtaining a full written release of its insureds from Sally Fielder's liability claims,[3] is due in large part to Judge Singleton's July 27, 2005 Order declaring that Allstate was justified in refusing to pay insurance proceeds unless it obtained a full release of its insureds.  Docket 42 at 14 ("To tender policy limits without securing a full release of the insured's personal liability seems absolutely contrary to protecting the interests of the insured.") and id. at 7 ("[T]he extent of the release the insurer is allowed to require appears to be unsettled").  This declaratory judgment

---

[1] Docket 16, Estate's Memo in Opposition to Allstate's Rule 12(b)(6) Motion to Dismiss Estate's Counterclaims at 7.

[2] Sally Fielder moved for a new trial and a JNOV following the defense verdict in the jury trial.

[3] While Allstate tendered the liability insurance proceeds to Sally Fielder on September 29, 2006 pursuant to her agreement to fully release Allstate's insureds for all claims arising from the accident, Allstate has not yet received Fielder's signed release in hand.

action was necessary to establish that a reasonable settlement opportunity does not exist until a third party claimant agrees to fully release the insured.  Docket 42 at 14 ("[A] policy limits offer that does not fully release an insured's personal liability does not provide a reasonable opportunity to settle.")

Now that Allstate has used the "disputed" jury verdict and Judge Singleton's declarations to negotiate a full release of the Estate, paying only the liability policy limit, the Estate wants this Court to weigh in on subject matter jurisdiction.  Instead of a simple final judgment procedure, with each party to bear its own costs and attorneys fees, the Estate asks the Court to reconsider a subject-matter jurisdiction challenge which has been raised by the Estate three times already and rejected.[4]  The Estate's real agenda for raising lack of jurisdiction a fourth time appears to be an improper tactical move to either (1) set up some sort of "prevailing party" dispute as to attorneys fees, or (2) circumvent the ultimate "finality" of the Court's dismissal of the Estate's counterclaims.  See Docket 42 at 17.

I.    THE ESTATE'S EARLIER BRIEFING EXEMPLIFIES THE "CONTROVERSY" OVER ALLSTATE'S DUTY TO INDEMNIFY

Shortly after the December 14, 2001 Menerey/Fielder automobile accident, Allstate made the decision to pay Sally Fielder the available policy limits as long as it could obtain a

---

[4] See, e.g., Docket 42 at 8; Docket 49 (denying Estate's motion for entry of final judgment at Docket 48); Docket 108 (2006 order denying Estate's motion for reconsideration at Docket 107 which repeated "lack of controversy" argument).

full release of its insured, the Estate of Julie Menerey.
Allstate's goal of protecting its insured against Fielder's
claims was frustrated when Fielder's counsel (a) refused to fully
release the Estate during settlement negotiations and (b)
ultimately sent a letter unequivocally declaring "that no further
offers within policy limits would be made or considered."  Docket
42 at 3, citing to Docket 3, Ex. 14.  After Fielder gave Allstate
no hope of fully protecting its insured in exchange for payment
within the policy limits, Allstate prudently sought a judicial
declaration that Sally Fielder had never presented Allstate with
a reasonable settlement opportunity.

Far from having "no controversy" with Allstate concerning
Fielder's allegation that Allstate's limits had "opened up," Mr.
Sanders argued on behalf of the Estate in March of 2005:

> [A]ccording to Allstate, if Libbey would simply agree
> that the insurer did nothing wrong in handling the
> Fielder claim, he would incur no costs or fees in the
> federal lawsuit.  This, of course, is an absurd demand
> by an insurer in view of the fact that Libbey has no
> access to Allstate's internal records concerning the
> Fielder claim, and thus, is ignorant about the
> insurance company's key decisions.  <u>It is clearly
> unreasonable to think that Libbey should now give
> blanket approval of Allstate's conduct when Fielder is
> claiming that the insurer rejected her policy limits
> demand in 2003</u>.

Estate's Memo in Opposition to Allstate's Rule 12(b)(6) Motion to
Dismiss Estate's Counterclaims at 7, Docket 16 (emphasis added).
Thus, the Estate joined Sally Fielder in speculating that
Allstate's exposure exceeded the policy limits.  <u>See</u> <u>also</u> Docket
42 at 5 (July 27, 2005 Order noting that the Estate contested

Allstate's satisfaction of its contractual duties as grounds for finding a case or controversy). The Estate's briefing at Docket 16 contradicts the Estate's undocumented assertions in its pending memorandum at 6 that there was "never a conflict, dispute or controversy between Allstate and the Menerey Estate concerning . . . the duty to indemnify." See, e.g., Docket 111 at 6. This March 2005 brief by the Estate also contradicts the Estate's current assertion at 4 that "The Menerey Estate had never asserted that Allstate had done something wrong and therefore had excess exposure."

The Estate's own briefing in March of 2005 documented how a case or controversy existed as between Allstate and the Estate concerning the scope of the duty to indemnify at the time Judge Singleton issued his July 27, 2005 Order. See generally, Aetna Life Ins. Co. v. Hartford, 300 U.S. 227, 241-243, 57 S. Ct. 461, 464-465 (1937) (coverage dispute presented sufficient case or controversy notwithstanding allegation that insured's health could improve and "permanency" of disability could be in question); Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 271 and 274, 61 S. Ct. 510, 511 and 512-513 (1941) (declaratory judgment permitted through tort action had not yet proceeded to judgment).

At page 3 of Docket 111, the Estate claims it was opposed to a confession of judgment and took the position that Fielder's tort claim should be vigorously litigated. However, the truth is that as of December 2005, and through the conclusion of the tort

trial, counsel for the Estate refused to allow the Estate to enter an agreement documenting this position.  <u>See</u> Exhibit A (12/14/05 letter with attachment).  Mr. Sanders lined out <u>as unacceptable</u> the provision "As evidenced by this stipulation it is the express intention of the Estate to allow Allstate to defend the Estate in the consolidated tort action."  Exh. A at 3.

Because the Estate would not acknowledge Allstate's policy limits were effective, and the Estate would not commit to a resolution of Fielder's tort claims through a jury trial, the controversy continued.

II.  <u>THE ESTATE MISCHARACTERIZES THE CONTROVERSY AS "HYPOTHETICAL"</u>

In an analysis previously considered and rejected by the Court, the Estate asserts that Judge Singleton's declarations were "hypothetical" and "advisory" opinions:  "[T]he Court was being asked to issue an advisory opinion on what Allstate's exposure would be <u>if</u> Menerey was liable, <u>if</u> there was an excess verdict, and <u>if</u> there was an assignment of rights to Fielder." Once again, the Estate mischaracterizes the issue.  The issue in this particular declaratory judgment case has never been what ultimately might be the exposure in the tort case or in a subsequent appeal.  The issue has always been Allstate's effort to obtain a full release of its insured by offering to pay the liability policy limit.  Allstate offered to settle Sally Fielder's liability claim for the policy limit after the accident, and stuck by this original offer even after the defense

verdict in the tort case.  Even after a defense verdict, Sally
Fielder did not abandon her tort claims against the Estate.
Fielder contested the defense verdict with a motion for new trial
and a motion for JNOV.  See Exhibit B (Fielder's Motion for
Judgment Notwithstanding the Verdict and Alternatively, A New
Trial).  This motion in the tort case demonstrated Fielder's
intent to appeal should these motions be denied.  What has been
critical, then, in enabling Allstate to obtain a full release of
the Estate was not simply a jury verdict, but Judge Singleton's
clarification that (1) Allstate's conduct in negotiating a
settlement through February 2003 had not "opened up" Allstate's
policy limits[5] and (2) that Allstate did not have a duty to pay
insurance proceeds unless and until Fielder provided a full
release of the Estate.  Docket 42 at 14.

This declaratory judgment action has achieved the "classic"
purpose this form of relief is designed to achieve:

> The remedy made available by the Declaratory Judgment
> Act and Rule 57 is intended to minimize the danger of
> avoidable loss and the unnecessary accrual of damages
> and to afford one threatened with liability an early
> adjudication without waiting until his adversary should
> see fit to begin an action after the damage has
> accrued.  It relieves the potential defendants "from
> the Damoclean threat of impending litigation which a
> harassing adversary might brandish, while initiating
> suit at his leisure--or never."  It permits actual
> controversies to be settled before they ripen into
> violations of law or a breach of contractual duty and
> it helps avoid multiplicity of actions by affording an

---

[5] Judge Singleton's subject matter jurisdiction analysis
focused the controversy on Allstate's past conduct, not what
might happen in the tort case:  "Allstate either did or did not
breach its duty to act in good faith when it made its offers to
Fielder and rejected Fielder's counteroffers."  Docket 42 at 5.

adequate, expedient, and inexpensive means for
declaring in one action the rights and obligations of
litigants.

National Chiropractic Mut. Ins. Co. v. Doe, 23 F. Supp. 2d 1109,

1114 (D. Alaska 1998) (quoting 10A, Charles Alan Wright, Arthur

R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2751

at 569-571).

Consistent with the declaratory relief remedy, Allstate was
able to obtain favorable declarations addressing the facts
leading to Fielder's refusal to settle "within policy limits."[6]
The declarations Allstate obtained focused on the undisputed
offers made after the accident until the point in time when
Fielder refused to consider further settlement offers within
policy limits.  This was a concrete record, ripe for judicial
review, and not "hypothetical" in nature.  See Docket 42 at 5 and
12 ("Allstate seeks declarations as to the legal consequences of
its settlement offer in November, 2002 and its rejection of
Fielder's offers in January and February, 2003 . . . .  The terms
of the offers appear to be undisputed and thus amendable to
summary judgment.")  Because of the favorable declarations
obtained in July 2005, and the difficulties Fielder faced in
further tort proceedings, Allstate was able to finally persuade
Fielder to settle her disputed liability claim in exchange for a
full release of the Estate.[7]

---

[6] See Docket 75, Ex. A, Dennis Mestas' June 25, 2003 letter.

[7] There is no way to predict that Allstate could have
obtained a full release of its insureds--even after the defense

The fact that the Estate now wants to ignore the claims relating to Fielder's refusal to offer a "full release" and that Allstate's limits had been opened up because of Allstate actions prior to June, 2003, does not in any way diminish the case or controversy.  Essentially, the Estate's argument is that anytime an insured resists clarification of the parties' duties under a contract, an insured can successfully challenge the Court's subject-matter jurisdiction.  This is contrary to well-established federal precedent.  See, e.g., Dizol, 133 F.3d at n.2 (a dispute between an insurer and its insured over the duties imposed by the insurance contract satisfies Article III's "case or controversy" threshold); Aetna Life Ins. of Hartford v. Haworth, 300 U.S. 227, 244, 57 S. Ct. 461, 465 (1937) ("It is the nature of the controversy, not the method of its presentation or the particular party who presents it, that is determinative.")  See also Docket 42 at 6.

III.  DECLARATORY JUDGMENT ACTIONS CONCERNING THE SCOPE OF INDEMNITY ARE ROUTINELY ALLOWED TO PROCEED IN ORDER TO MINIMIZE TORT LITIGATION

The Estate argues "[t]his lawsuit should never have been filed" because Fielder "never had any standing to complain about

---

verdict--without the declarations in Judge Singleton's July 27, 2005 Order at Docket 42.  Allstate's declaratory judgment action was not "mooted" by the defense verdict in the tort case finding the Estate was "not negligent."  The facts show that Sally Fielder did not accept the jury's verdict as terminating her claim against the Estate.  Moreover, it took Judge Singleton's July 27, 2005 Order to clarify Allstate's entitlement to a "full release" of its insured.

Allstate's treatment of the Estate." That is not the point. Fielder refused to fully release Allstate's insured and refused to consider settlement within policy limits. Fielder invited a confession of judgment from the Estate based upon a claim the Estate owed no duty to cooperate with Allstate. Allstate needed the Estate (as well as Sally Fielder) to be bound to any declaration that Allstate had been presented with no "reasonable settlement opportunity."

The fact that the Estate's liability was contingent did not preclude the existence of a live "controversy." Alaska precedent routinely authorizes declaratory judgment actions concerning the potential scope of indemnity prior to the final resolution of a tort case. See, e.g., Maloney v. Progressive Specialty Ins. Co., 99 P.3d 565, 567 and 569 (Alaska 2004) (Court declared that an insurance company had, in fact, made a "policy limits" offer to a tort claimant, resolving that legal dispute prior to resolution of the underlying tort case); Russell v. Criterion Ins. Co., 917 P.2d 664, 665 (Alaska 1996) (insurer allowed to intervene and obtain a summary judgment ruling as to policy's limited coverage for Rule 82s prior to the personal injury action proceeding); Hughes v. Harrelson, 844 P.2d 1106 (Alaska 1993) (ruling of law given on sufficiency of "policy limits offer" prior to damage determination in underlying tort case); State Farm Mut. Auto. Ins. v. Lyons, 914 F.2d 263 (9th Cir. 1990) (after invalidating some exclusions, the Ninth Circuit declared what "policy limits would be" even before "liability was properly established"); Am.

States Ins. Co. v. Kearns, 15 F.3d 142, 144 (9th Cir. 1994)
(insurer entitled to seek declaration as to duty to defend or
indemnify prior to resolution of underlying tort case); Md. Cas.
Co., 312 U.S. at 271 and 274 (declaratory judgment on coverage
dispute allowed to proceed even though tort case had not reached
judgment).

Courts reject the notion that a pending tort case undermines
the actual "controversy" because Courts recognized that the
extent of insurance can have a profound effect on whether the
tort case settles or continues indefinitely.  See, e.g., National
Chiropractic, 23 F. Supp. 2d at 1119-1120 (the existence and
extent of insurance can have a profound impact on how litigants
in a tort case attempt to settle a case).  In this case, the
settlement Allstate was able to achieve included a full release
of its insured, ultimately mirroring the declarations in Judge
Singleton's July 27, 2005 Order.  The settlement also was limited
to Allstate's policy limits—the scope of indemnity which Allstate
originally sought in the declaratory judgment action.  Judge
Singleton's rulings in this declaratory judgment action enabled
the settlement which was finally and recently achieved.    Just
because parties settle a declaratory judgment does not mean that
the Court no longer has subject matter jurisdiction.  Courts
routinely retain jurisdiction to document a settlement without a
non-settling party being entitled to declare the Court lacked
jurisdiction because subsequent events have resolved the
"controversy."

Allstate does not seek further declarations now that Fielder has finally agreed to a full release of Allstate's insureds. Rather than presenting "moot" claims, Allstate merely asks the Court to retain jurisdiction pending Allstate's receipt of Sally's signed release plus clarification from the Estate that it no longer seeks attorneys fees from Allstate or contests the dismissal of its counterclaims.

IV.    THIS "FOURTH" MOTION IS A BACK-DOOR EFFORT TO SEEK UNWARRANTED MONETARY RELIEF FOR THE ESTATE

This "fourth" attempt by the Estate to preserve a subject matter jurisdiction challenge is really just a back door effort by the Estate to persuade the Court to consider awarding the Estate monetary relief in the form of attorneys fees.  But this is the same sort of "damage" claim the Estate would be making pursuant to its counterclaims, claims which were dismissed for failure to state a claim.  It contradicts the underlying purpose of a jurisdictional challenge for the party to use the Court's discretion to decline jurisdiction as the springboard for seeking affirmative monetary relief.

Moreover, the reality is that the "huge legal bills" the Estate "incurred" in the declaratory judgment action were due to the Estate's own tactics, not Allstate's.  On January 14, 2005, Allstate informally proposed to the Estate a stay of the declaratory judgment action pending resolution of the tort case then scheduled for trial in May, 2005.  The Estate responded that not only would it not join in a stipulation to stay, the Estate

would oppose any motion to stay filed by Allstate.  Accordingly, Allstate wrote to the Estate informing Mr. Sanders that Allstate would not seek a stay in light of the Estate's position.

If the Estate had accepted Allstate's proposal to stay the declaratory judgment action back in January of 2005, the only fees the Estate incurred up to that time totaled 12.8 hours.  A significant portion of those 12.8 hours had nothing to do with the "defense" of the declaratory judgment action, but concerned Mr. Sanders' research of counterclaims against Allstate.  If the Estate had agreed to a stay in January 2005 its fees would have been limited to 12.8 hours.  By refusing to stipulate that the tort case could be tried by a jury, Allstate's condition for a stay, the Estate perpetuated the declaratory judgment dispute and elected to increase its actual fees ten-fold.

The bottom line is that to the extent the Estate incurred anything more than minimal fees, it was because of the Estate's tactical decisions in this case.  The Estate made the choice to spend its resources repeating over and over again why it should not have been sued, rather than letting Fielder fight the battle over Allstate's policy limits or simply agreeing to a stay. Since the Estate's counterclaim was premised on it being joined in the declaratory judgment action, the Estate's "huge" bills are a testament to the actual, live controversy between Allstate and the Estate.  This controversy was resolved against the Estate when the counterclaims were dismissed with prejudice.  The Court

should continue to exercise jurisdiction to render this dismissal a final judgment.

<u>CONCLUSION</u>

This "fourth" motion contesting the Court's subject matter jurisdiction beats a dead horse.  All of the arguments presented by the Estate were considered and rejected more than once. Allstate respectfully requests that the Court retain jurisdiction through the conclusion of this case.  Allstate will continue to seek a stipulation by the parties to a final dismissal with all the parties agreeing to bear their own costs and attorneys fees. If the Estate continues to oppose that outcome, then it is appropriate for this Court, in the interest of finality and judicial economy, to render a final judgment in favor of Allstate on the dismissed counterclaims of the Estate and the other declarations of Judge Singleton.

DATED this 10th day of October, 2006, at Anchorage, Alaska.

By:  <u>s/Alfred Clayton, Jr.</u>

BLISS, WILKENS & CLAYTON
Counsel for Plaintiff
Allstate Indemnity Company
500 L Street, Suite 200
Anchorage, AK   99501
E-mail:  atc@bwclawyers.com
Phone: (907) 276-2999
Fax:  (907) 276-2956
[ABA No. 9111079]

**CERTIFICATE OF SERVICE**

I hereby certify that on October 10, 2006, a copy
of the foregoing Allstate's Opposition to Estate's
Motion to Dismiss For Lack of Subject Matter
Jurisdiction was served electronically on:

**Eric Sanders**

**Dennis M. Mestas**


**s/Alfred Clayton, Jr.**


N:\ASM\854\451\PLDG\DISMISS.Subject.Matter.Jurisd.OPP.doc