IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

SALLY FIELDER, an individual; )
)
    Plaintiff, )
)
VS. ) CASE NO.: 3AN-03-13709 CI
)
THE ESTATE OF JULIE MENEREY, )
Deceased; )
)
    Defendant. )
_____ )

RECEIVED
Ingaldson, Maassen & Fitzgerald, PC

MAY 2 4 2006

File No. 35-2  Cal: 6-5-06

Approved for File: _____

**PLAINTIFF SALLY FIELDER'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND, ALTERNATIVELY, A NEW TRIAL**

I.   **SUMMARY OF THE ARGUMENT**

    The Parks Highway near the center of Wasilla, Alaska, has five traffic lanes, including a center turn lane. See, Attachment 1, Wasilla Police diagram of the accident scene. It is uncontested that sixteen-year-old Julie Menerey lost control of her vehicle, crossed out of her lane of travel east, passed through the two adjacent lanes, and ended up crashing passenger side first into an oncoming Ford Taurus heading in the opposite direction.[1] Alaska law prohibits the crossing of the centerline into an oncoming lane of traffic. Drivers which violate that law are presumed to be negligent. This presumption shifts the burden of proof to the driver transversing the center line to prove affirmatively that her violation was excused under the law. A failure to produce such evidence results in the driver being found negligent as a matter of law.

---

[1] Plaintiff's trial brief admits that Julie Menerey lost control of her vehicle.

-1-

Here, the Estate produced no witnesses, expert or otherwise, to address this issue. The police investigation determined Julie Menerey was negligent by driving too fast for conditions around a curve and losing control of her car. Three eye-witnesses through testimony or statements concurred. A second accident investigator analyzed all of the evidence and similarly concluded that Julie Menerey was driving too fast for the conditions. This caused her vehicle's rear-end to yaw left and she then overcorrected into the far left oncoming lane of traffic.

Defendant Estate produced no witnesses in response. Defendant Estate failed utterly to rebut the presumption of negligence. The Estate adduced no evidence that would excuse the young woman's loss of control of her vehicle and her crossing into oncoming traffic. On this record, this court is required by Alaska law to enter a judgment notwithstanding the verdict establishing that Julie Menerey's conduct was negligent.

## II.   ALASKA LAW CONCERNING MOTIONS FOR JNOV AND NEW TRIAL.

### A.   J.N.O.V. LAW

A.R.C.P. 50(b) controls motions for judgment notwithstanding the verdict. Whenever a motion for a directed verdict made at the close of all the evidence is denied (or for any reasons is not granted), the court is deemed to have submitted the action to the jury subject to a later determination of the legal issues raised by the motion. See, A.R.C.P. 50(b). A party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the party's motion for a directed verdict. Id. The rule also allows a motion for a new trial to be prayed for simultaneously or in the alternative.

A.R.C.P. 50 was taken almost in its entirety from the federal rule controlling motions JNOV. That rule recognizes the orthodox doctrine that questions of fact are for the jury and questions of law

-2-

Exhibit B
Page 2 of 11

are for the court. Rule 50 is one of the judicial control devices provided by the Rules of Civil Procedure so that the court may enforce rules of law. It allows the court to take away from the jury's consideration cases or issues when the facts are sufficiently clear that the law requires a particular result. See, Wright and Miller, Federal Practice and Procedure, Civil 2d §2521 at p. 240.

The Alaska Supreme Court has determined that when reviewing a motion for a judgment N.O.V., the court should determine whether the evidence, viewed in the light most favorable to the non-movant, is such that reasonable persons could not differ in their judgment. The court does not weigh the evidence nor judge the credibility of witnesses. Rather, it employs an objective test: if there is room for a diversity of opinion among reasonable people then a jury question exists. Failing that, the motion should be granted. See, Veco, Inc. vs. Rosebrock, 970 P.2d 906, 915, fn 20 (Alaska 1999).

In an auto negligence case, the question becomes whether or not the court can perceive an explanation for the accident, based on a review of the evidence most favorable to the defendant, which does not include negligence on his part. See, Hahn vs. Russ, 611 P.2d 66, 68 (Alaska 1980). If the evidence fails that test, the motion for directed verdict (and any J.N.O.V.) must be granted as to the issue of negligence. Id.

B.  NEW TRIAL LAW

A.R.C.P. 59(a) allows the court to grant a new trial "if required in the interest of justice." The decision to grant or deny a new trial is within the trial court's discretion. The trial court will be affirmed in a decision to deny a new trial if there is an evidentiary basis for the jury's decision. The trial court decision denying a new trial will be reversed "if the evidence supporting the verdict was so completely lacking or slight and unconvincing as to make the verdict plainly unreasonable and

unjust." See, Pugliese vs. Perdue, 988 P.2d 577, 581 (Alaska 1999). On a motion for a new trial, unlike a motion for judgment as a matter of law, the judge may set aside the verdict even though there is substantial evidence to support it. The trial judge may weigh evidence and consider the credibility of witnesses and, if he finds the verdict is against the clear weight of the evidence, he must set aside the verdict and grant a new trial. See, Wright, Miller & Kane, Federal Practice and Procedure, Civil 2d Section 2806, p. 65.

## III. ALASKA AUTOMOBILE LAW

In Alaska, "unavoidable accident" is not an affirmative defense and may not be the subject of a jury instruction. See, Wiedmyer vs. Southeast Skyways, Inc., 584 P.2d 1, fn 64 (Alaska 1978). Similarly, it is reversible error for a court to instruct a jury that "merely because an accident occurred to plaintiff that this will not, of itself, make the defendant liable." See, Maxwell vs. Olsen, 468 P.2d 48, 54-55 (Alaska 1970). Both instructions, and both legal defense theories, are forbidden because they have a tendency "to confuse and mislead juries in ordinary negligence actions." Id.

Neither is it a defense for a driver to claim in Alaska that they failed to control their speed because of unexpected icy roads that would make driving difficult. In Clabaugh vs. Bottcher, 545 P.2d 172, 176 (Alaska 1976), the supreme court sustained a trial court grant of summary judgment against a defendant driver for negligent conduct for failing to reduce her speed in anticipation of an icy surface on a downhill slope. In response to the defense that this was something that she could not have anticipated, our court stated:

> It was early February, and any driver exercising the privilege of operating a motor vehicle on the highways of Interior Alaska at that time of year must be expected to anticipate the presence of ice on the roadway and the possibility of slippery road conditions that would make it difficult to stop.

-4-

Exhibit B
Page 4 of 11

Id. at 176-177. The court noted that the driver was "under a duty to reduce her speed as she approached the crest of the hill" and that had she done so there would have been more than ample time for her to make the stop even under slippery conditions. The court determined the driver to be negligent as a matter of law.

A trial court failure to grant judgment notwithstanding the verdict on the issue of a driver's negligence was reversed in Hahn vs. Russ, 611 P.2d 66 (Alaska 1980). There, a rear-end collision occurred in heavy rush hour traffic and defendant provided no explanation not involving his own negligence for the accident. Nevertheless, the jury verdict was for the defendant. Our supreme court reversed the trial court's failure to grant a J.N.O.V. and stated:

> It is a matter of common understanding that one who "rear-ends" another vehicle under normal circumstances is generally negligent.

Id. at 67. The court could see no explanation for the accident, even when based on review of the evidence most favorable to defendant, which did not include negligence on his part. Accordingly, the court order denying the directed verdict and J.N.O.V. was reversed. The Hahn case is shown at Attachment 2 to this memorandum.

Similarly, our court has ruled that in the ordinary case wherein a driver crosses the center lane of traffic into the oncoming lane, such driver is presumed to be negligent. See, Getchell vs. Lodge, 65 P.3d 50, 53 (Alaska 2003). This case is shown at Attachment 3. The Getchell court recognized the longstanding rule in Alaska that once plaintiff has proven defendant's car crossed the center lane of traffic travel into the oncoming lane (in violation of 13 A.A.C. 02.085 and 13 A.A.C. 02.050), the burden of proof shifts to defendant to show by a preponderance of the evidence that her conduct was excused. Id. at 53. The Getchell case sets out, the Restatement (Second) of Torts position on what

-5-

Exhibit B
Page 5 of 11

constitutes an excuse. Id. at 54 at footnote 9.

Excuse, under facts similar to the case at bar, would require defendant to prove both that: (1) she is unable after reasonable diligence to comply with the requirement that she not cross the center lane into oncoming traffic; and (2) she is not confronted with an emergency due to her own misconduct. Id.

The Getchell case involved a woman who saw a moose in her lane of traffic, braked and skidded on ice into the oncoming lane, and caused a collision. Our court noted:

> Getchell is correct that Lodge can only claim excuse if she handled her moose-avoidance maneuver and the resulting skid in a non-negligent manner.

Id. at 54. Specifically, the court determined a factual dispute existed because there was evidence that the defendant driver did not: (1) purposefully steer into the oncoming lane; and (2) the skid was not caused by her negligence. Id. The court noted that both parties agreed it would have been negligent to steer into the oncoming lane of traffic following the skid. However, Lodge testified she didn't steer at all. She, and her expert witnesses, established the defense that she slammed on her brakes to avoid the moose and locked them into the skid without steering. Her expert testified that given the limited time she had to react to the moose hazard (estimated at 1.5 seconds), she could not have conformed her conduct. The court concluded reasonable jurors could believe she was unable, after reasonable care, to comply and could have found excuse. Importantly, the investigating trooper also testified that the only contributing factor to the accident was the moose and that no human factors contributed. Id. at 55.

## IV. APPLYING ALASKA LAW TO THE FACTS BEFORE THE COURT

The case at bar is completely different in its factual record than Getchell. Here the

-6-

Exhibit B

Page 6 of 11

investigating officer (McNeil), with six to eight hundred accident investigations under his belt, concluded that the cause of the accident was the sixteen-year-old's driving at an unsafe speed on an icy surface around a corner. The police officer's determination was made on the marks he observed at the scene, an interview with the driver defendant crashed into (Jesse Miller), and an interview with witness Cody Hannaman. Together this evidence established that Julie was driving too fast for conditions, causing her rear-end to slide out to the left, following which she overcorrected left, and then slid passenger side forward across three lanes of traffic before crashing into the Ford Taurus. See, in court notes on McNeil testimony, pp. 10-11, 14 at Attachment 4.

It should be remembered that the Getchell court noted "that Lodge can only claim excuse if she handled her moose-avoidance maneuver in a non-negligent manner." Id. at 54. Lodge met this burden by testifying that she did not steer at any time into the other lane and had done nothing to provoke the slide other than to slam her brakes in order to avoid the moose in the first place. This led our court to determine that reasonable jurors could have concluded the presence of the moose in the road excused the skid. Importantly, the court noted at footnote 14 that the Restatement discussion required that to be an excuse the emergency could not have been caused by plaintiff's own conduct.

In contrast to the Getchell facts, in the case at bar there is no evidence that any emergency arose which would have left Julie Menerey with no choice but to slam on her brakes and slide into the adjacent oncoming lanes of traffic. Remember, the supreme court noted that "both Getchell and Lodge agree that it would have been negligent to steer into the oncoming lane of traffic on purpose under the circumstances of this (the moose) case." Id. at 54. Any steering by Julie Menerey taking her in the direction across the center line into a head-on accident position would be negligence. To

-7-

Exhibit B
Page 7 of 11

the extent she overcorrected left after fishtailing right (which was the theory stated by Officer McNeil, Jim Stirling, and the three eyewitness statements relied upon by Jim Stirling), she would have been negligent as a matter of law.

The remaining claims to an excuse raised by counsel for the defense are two: (1) Julie hit a small patch of ice which no reasonable driver could have avoided and excusably caused her loss of control; or (2) she was forced out of her lane by the adjacent Hannaman vehicle swerving directly in front of her and cutting her off. Both theories have zero evidentiary support. They were promoted at trial by the arguments of counsel, not the statements of witnesses.

The slide on the unforseen ice theory is wrong because nearly every witness testified it was a very icy night and there was ice covering all the lanes of traffic. The police report showed it was twenty degrees below zero and the road surface was snow and ice. The police report photos confirm that. The testimony of Officer McNeil, Jim Stirling, and Cody Hannaman also confirmed the roads were very icy. No reasonable dispute remains that the roads were not icy that night and for that reason this defense fails on a factual basis. It fails on a legal basis as well. (See, the above discussion of our supreme court's holding in Clabaugh vs. Bottcher, supra.) Icy roads in wintertime Alaska are a forseeable hazard that _must_ be anticipated or the driver can be determined on summary judgment to be negligent as a matter of law. Factually and legally defendant's claim that Julie's crossing the center line was excused because of the small patch of ice theory is just wrong.

The second claimed defense is even more purely lawyer argument than the first. Eyewitness testimony from James Watts established that the vehicle he was riding in never left its lane of travel. (See, Attachment 5, deposition of James Watts at pp. 19, 30-31) Eyewitness testimony from Cody Hannaman established the same thing. (See, Attachment 6 at pp. 16-19.) The accident analysis by

-8-

Exhibit _B_
Page _8_ of _11_

Officer McNeil mentions no such evidence (See, Attachment 4 at pp. 10-11) and the complete accident analysis of experienced expert Jim Stirling (See, Attachment 7 at pp. 1-3, 5-6 and 9-10) demonstrates through eyewitness and expert analysis that the Hannaman truck did not leave its lane of travel or otherwise interfere with the direction of travel of the Menerey vehicle. (This court has even previously made the same finding in its order of summary judgment dated May 16, 2005 in which it stated at page 3: "There is also no evidence to show that Mr. Hannaman was in Ms. Menerey's lane, or in her way to cause her to lose control." See, Attachment 8 at p. 3.)

Defendant's lawyer argument that the unsworn note by James Watts, referred to in the expert record of Jim Stirling, stating that the Hannaman vehicle "started to swerve a little" was somehow persuasive evidence that all of the direct eyewitness testimony and expert analysis is wrong is ridiculous. When put under oath, Watts stated nothing of the kind. The note itself, does use the words "started to swerve a little" but says nothing about exiting a lane of travel. Further, it is immediately followed by additional language identifying Julie Menerey's negligent conduct:

> Cody then started to swerve a little and he said "Oh No"! I looked back and Julie had lost control of the car. She was sliding to the oncoming lane. Her back-end then started to slide in first which would have put the driver's side first to the oncoming traffic. Due to the natural reaction she turned the wheel the other way and overcorrected herself. This then threw the car completely sideways with the passenger side now facing oncoming traffic.

See, note partially presented to jury through the testimony of Jim Stirling at Attachment 9. Of course, Stirling opined that this evidence supported both his theory of the accident and that of the police investigation. It also coorborated the other two eyewitnesses. Defense counsel's claim that an entirely new theory of the case can be deduced by taking this note out of context and ignoring all the witness testimony is simply lawyer argument - - not proof of anything.

-9-

Exhibit B
Page 9 of 11

For the reasons above discussed, the defense's complete failure to call any witnesses, including any experts, has left the presumption of negligence uncontested for purposes of the legal analysis required under Alaska law. Julie's conduct was negligent because it was presumed to be so after she crossed the centerline when there is no preponderating evidence establishing an excuse. Further, the police investigation, the Stirling investigation, and the three eyewitnesses to the accident all established that the Menerey car slid left due to excessive speed for the curve and conditions and then overcorrected right due to the inexperience of the driver. Both conducts were negligent as a matter of law.

## V.   CONCLUSION

Julie Menerey's conduct, when viewed under controlling Alaska authority, was negligent as a matter of law. Reasonable people could not differ on this conclusion. The court should so rule. If for reasons beyond the ken of plaintiff's counsel this court does not so rule, the court must then apply the new trial standard to the same facts. This would require a weighing of the evidence and an inquiry concerning whether or not the clear weight of the evidence supports a finding that Julie was not negligent. Five witnesses say she was negligent. No witnesses say she was not. The conclusion is inescapable, at a minimum, that a new trial should be granted in this matter.

Respectfully submitted this the 19th day of May, 2006, at Anchorage, Alaska.

**BURKE & BAUERMEISTER, P.L.L.C.**
Attorney for Plaintiff Sally Fielder

*/s/ DC Bauermeister*
**DON C. BAUERMEISTER**

-10-

Exhibit B
Page 10 of 11

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing was served upon all parties listed below by placing a copy of same in the U.S. Mail, first class with postage prepaid on this the 25 day of May, 2006.

William H. Ingaldson, Esq.
Ingaldson, Maassen, Fitzgerald, P.C.
813 W. 3rd Avenue
Anchorage, Alaska 99501

Jason Skala, Esq.
Attorney at Law
12330 Old Glenn Highway, Ste. A
Eagle River, Alaska 99577

Karen Bretz, Esq.
610 C Street, Ste. 2B
Anchorage, Alaska 99509

Lester K. Syren, Esq.
Box 112141
Anchorage, Alaska 99511

_____
Torie Viverios, Legal Secretary