UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALLSTATE INDEMNITY CO.<br><br>             Plaintiff,<br>vs.<br><br>SALLY FIELDER and DANIEL E.<br>LIBBEY, as personal representative of the<br>ESTATE OF JULIE MENEREY,<br>             Defendants. | Case No. 3:04-cv-00246-TMB<br><br>**ORDER  REGARDING<br>MOTION TO DISMISS FOR LACK OF<br>SUBJECT MATTER JURISDICTION** |

**I.  MOTIONS PRESENTED**

Defendant Daniel E. Libbey, personal representative of the Estate of Julie Menerey ("Estate"), moves to dismiss for lack of subject-matter jurisdiction a declaratory judgment action brought by Allstate Indemnity Co. against the Estate and a third-party claimant, Sally Fielder Hannaman ("Fielder"). Allstate, in turn, moves to dismiss its claims against the Estate with the parties bearing their own costs and attorney's fees. Oral argument was held January 9, 2007, during which the Court requested supplemental briefing. The parties have provided such briefing.

## II.  BACKGROUND

According to Allstate's complaint, Julie Menerey was driving a vehicle owned by her mother Amy Menerey and insured by Allstate when she collided with another vehicle on the Parks Highway near Wasilla on December 14, 2001.  Menerey died 12 days later as a result of her injuries. Fielder, a minor, was riding in the Menerey vehicle at the time of the accident and suffered serious injuries. Amy Menerey's auto insurance policy carried facial limits for liability coverage of $50,000 per person and $100,000 per occurrence.

Shortly after the accident, Allstate advised Fielder and her parents that she could make a liability coverage claim. The Fielders declined Allstate's initial attempts to settle the claim, stating that they wished to allow Fielder to settle on her own once she reached the age of 18. However, in September 2002 Fielder and her parents wrote that they were willing to settle for policy limits. Allstate informed the Fielders of the policy limits for liability and underinsured motorist ("UIM") claims and gave them a proposed release that would have released the Estate, Amy Menerey and Allstate from any and all claims under the liability and UIM coverage, including "failure to offer" claims.[1]

Fielder refused the settlement offer and obtained counsel. Over the next several months, Allstate and Fielder each made settlement offers accompanied by proposed releases. These offers included a November 27, 2002 proposal by Allstate to pay Fielder per-person liability limits

---

[1] *See Jackson v. American Equity Ins. Co.*, 90 P.3d 136, 142 (Alaska 2004) ("When a plaintiff makes a policy limits demand, the covenant of good faith and fair dealing places a duty on an insurer to tender maximum policy limits to settle a plaintiff's demand when there is a substantial likelihood of an excess verdict against the insured. This duty is grounded in the insurer's legal duty to act in good faith to protect the interests of the insured.")

2

under the Menerey policy in exchange for an agreement to release the Estate, Amy Menerey and Allstate from all potential claims. The Fielders rejected this offer, and responded with a proposed release preserving their rights with regard to UIM coverage and other possible claims. Allstate then rejected the Fielders' terms and reiterated its earlier offer, contingent on a blanket release, which Fielder rejected once again.

On December 4, 2003, Fielder sued the Estate of Julie Menerey in Alaska Superior Court for damages related to her injuries from the accident. The following May, Fielder's attorney, Dennis Mestas, wrote to Eric Sanders, who was representing the Estate, and William Ingaldson, who was representing Allstate in the tort action, declaring that Allstate had "breached its obligations under the Menerey insurance" and offering to settle for a "confession of judgment for a reasonable amount of damages, a covenant not to execute, and an assignment of claims." Shortly thereafter, Mestas again wrote to Ingaldson, stating that he was waiting for the Estate's response to the earlier proposal. In the meantime, Allstate undertook a defense of the Estate, without a reservation of rights, and in October 2004 filed this declaratory judgment action in federal district court against Fielder and Libbey, as personal representative of the Estate. Allstate sought declarations that: (1) it had satisfied its duties to the Estate; (2) it was permitted under Alaska law to require a full release of Allstate's insureds from Fielder in her capacity as a third-party claimant seeking liability coverage; and (3) its obligation to the Estate was limited to a defense of Fielder's tort claims and indemnity for any judgment up to the estate's liability limits under the Menerey policy. As part of its "General Allegations," the complaint made the following assertion in support of the relief sought:

> 24. Upon information and belief, despite the defense Allstate is providing in the tort case, the estate of Julie Menerey and

> Sally Fielder have prepared and will arrange for the estate to confess judgment and assign any claims it has against Allstate. Such an arrangement would deprive Allstate of the right to defend the estate and would eliminate the opportunity for a jury to determine the liability and damage issues in the context of the tort complaint.

In answer to the complaint, the Estate admitted this allegation while Fielder denied it. However, four months later, the Estate moved to amend his answer so that he could deny the allegation, asserting that his initial admission was a "clerical error." The Estate's motion was accompanied by affidavits from Libbey and his attorney, Eric T. Sanders. Libbey's affidavit stated that "[a]t no time did I take steps to confess judgment and assign claims against Allstate;" Sanders' affidavit stated that he had "no knowledge about the factual basis of paragraph 24 of Allstate's declaratory judgment action" and that "[t]he allegations in this paragraph cannot be supported by evidence."

On March 15, 2005, the Estate filed a motion for summary judgment, seeking dismissal of the declaratory judgment action for lack of subject-matter jurisdiction. Fielder, likewise, filed a Rule 12(b)(2) asserting a lack of subject-matter jurisdiction. In response, Allstate moved to have the Estate's counterclaims against it dismissed under Rule 12(b)(6). The counterclaims accused Allstate of breaching its contract with Menerey and the implied covenant of good faith and fair dealing by initiating the declaratory judgment action against the Estate.

On July 28, 2005, the court issued an order resolving these motions and others. The Court rejected the challenges to subject-matter jurisdiction, concluding that Allstate's declaratory judgment action presented a justiciable controversy and met the requirements for ripeness under the Declaratory Judgment Act. As part of the same order, the Court also allowed the Estate to amend its

4

answer to Allstate's complaint and deny the allegation that the Estate planned to confess judgment and assign any claims it had against Allstate. Finally, the Court granted Allstate one aspect of the declaratory relief it sought. The Court ruled that under Alaska law an insurer that rejects a settlement offer that does not include a full release of the insured's personal liability has not acted in bad faith toward its insured. The Court thus found that Allstate was "reasonable and did not break the covenant of good faith and fair dealing when it rejected Fielder's offers."

The case was reassigned for administrative reasons to the undersigned on January 23, 2006. On May 15, 2006, the jury in the state tort action returned a verdict in favor of the Estate, finding that Menerey was not negligent in the December 14, 2001 accident. Shortly thereafter, Fielder filed a motion for judgment not withstanding the verdict and, alternatively, a new trial on her tort claims. Since then, Allstate and Fielder have engaged in settlement discussions, and on October 23, 2006, the parties filed a stipulation in federal district court to dismiss the claims against Fielder in Allstate's declaratory judgment action. As part of the stipulation, the parties agreed to bear their own attorney's fees and costs.

On September 22, 2006, the Estate filed the motion to dismiss presently before the Court, renewing its claim that the court lacks subject-matter jurisdiction because the declaratory judgment action was never ripe for review. Allstate opposes the motion and, separately, has moved for an order dismissing its claims against the Estate on the condition that each side bear its own costs and attorney's fees. The Estate opposes Allstate's motion.

### III. DISCUSSION

**A. The Law-of-the-Case Doctrine Does Not Bar the Court From Considering a Challenge to Subject Matter Jurisdiction**

Unlike other potential defects, an alleged lack of subject matter jurisdiction may be raised at any point in a case and, if found lacking, the court must dismiss the action. Phrased in absolute terms, Federal Rule of Civil Procedure 12(h)(3) provides that "whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."[2] The Ninth Circuit also has made clear that a district court retains the power to revisit its earlier rulings, so long as the court retains jurisdiction over the case and a final judgment has not been entered.[3] And it has explicitly stated that "*[a]ll rulings of a trial court are subject to revision at any time before the entry of judgment*."[4]

In its supplemental briefing following oral arguments, Allstate asserts that this Court should refrain from revisiting the issue of subject matter jurisdiction in keeping with the "law of the case" doctrine and the twin policies of comity and orderly administration. Allstate further argues that as a matter of federal practice and comity, the most cogent reasons[5] are required for [a] successor judge to overrule his predecessor. The Estate, Allstate contends, has not met this burden and, thus, has failed to justify revisiting the jurisdictional issue. In reply, the Estate argues that the "most cogent reasons" rule does not bar this Court from examining subject matter jurisdiction because the Ninth

---

[2] *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1194 n.2 (9th Cir. 1988) ("It is elementary that the subject matter jurisdiction of the district court is not a waivable matter and may be raised at anytime by one of the parties, by motion or in the responsive pleadings, or *sua sponte* by the trial or reviewing court.")

[3] *United States v. Smith*, 389 F.3d 944, 949 (9th Cir. 2004); *see also City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 888-89 (9th Cir. 2001).

[4] *Santa Monica Baykeeper*, 254 F.3d at 888.

[5] *See United States v. Desert Gold Mining Co.*, 433 F.2d 713, 715 (9th Cir. 1970)

Circuit has never held that a court must adhere to an earlier jurisdictional ruling it believes to be erroneous.

The "law of the case" doctrine ordinarily precludes a court from reexamining an issue previously decided by the same court, or a higher court, in the same case.[6] The doctrine is intended to promote efficiency in the operation of the courts[7] and "to advance the 'principle that in order to maintain consistency during the course of a single lawsuit, reconsideration of legal questions previously decided should be avoided.'"[8] But the "law-of-the-case doctrine is not an 'inexorable command;'"[9] nor does it operate as a limit on a court's power.[10] In *Southwest Marine Inc. v. Danzig*, the Ninth Circuit summed up the doctrine and its application as follows:

> [T]he doctrine is discretionary and not mandatory, merely expressing the practice of courts generally to refuse to reopen what has been decided and that a prior decision should be followed unless: (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes

---

[6] *Smith*, 389 F.3d at 948 (citing *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988)).

[7] *Id*. (citing *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000)).

[8] *Id*. (quoting *United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986)).

[9] *Id*. (quoting *Hanna Boys Center v. Miller*, 853 F.2d 682, 686 (9th Cir. 1988)).

[10] *Id*. (citing *Houser*, 804 F.2d at 567-68); *see also* Moore's Federal Practice § 134.21[1] (3d ed. 2007) ("When a court applies the law of the case doctrine to its own prior decisions . . . the traditional formulations of the doctrine must be conceived as rules of thumb and not as straight-jackets on the informed discretion and sound practical judgment of the judge.")

7

reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial.[11]

This Court concludes that it is appropriate to examine subject matter jurisdiction in response to the Estate's motion, given Rule 12(h)(3)'s command that courts "shall dismiss the action" whenever it appears that subject matter jurisdiction is lacking and because a final judgment has not been entered in the case.

**B. Allstate's Declaratory Judgment Action Does Not Present an "Actual Controversy"**

Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court.[12] It is then necessary for the party opposing the motion to present affidavits or other evidence to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction.[13] The district court does not abuse its discretion by looking to extra-pleading material in deciding the issue, even if it becomes necessary to resolve factual disputes.[14] The existence of subject matter jurisdiction ordinarily depends on the facts as they exist when the complaint is filed.[15]

---

[11] 217 F.3d 1128, 1136 n.8 (9th Cir. 2000) (internal quotations omitted).

[12] *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)

[13] *Id*.

[14] *Id*.

[15] *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989); *Dunmore v. United States*, 358 F.3d 1107, 1113 (9th Cir. 2004) ("[W]e determine subject-matter jurisdiction as of the complaint's filing date . . . ").

The Federal Declaratory Judgment Act provides that: "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[16] The question of whether a district court may properly exercise jurisdiction under the Act raises two issues.[17] First, the court must determine whether there is a case of "actual controversy" within its jurisdiction. The Ninth Circuit has held that this requirement is identical to Article III's constitutional "case or controversy" requirement.[18] Thus, the justiciability requirement under the Act is no more stringent than under the constitution.[19] "In order for a case to be justiciable under Article III of the Constitution, it must be ripe for review."[20] If a case is not ripe for review, then the court lacks subject-matter jurisdiction.[21] "Article III requires that there be a 'substantial controversy . . . .*of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment.'"[22] A justiciable controversy is thus distinguished from a dispute of a hypothetical or abstract character,

---

[16] 28 U.S.C. § 2201(a).

[17] *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994).

[18] *Id.*; *Societe de Conditionnement en Aluminum v. Hunter Eng'g Co.*, 655 F.2d 938, 942 (9th Cir. 1981).

[19] *Aydin Corp. v. Union of India,* 940 F.2d 527, 528 (9th Cir. 1991).

[20] *Id*.

[21] *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994).

[22] *Aydin*, 940 F.2d at 528. *(quoting Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

or from one that is academic or moot.[23] In *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* the Supreme Court acknowledged that the line between an "abstract question and a 'controversy' . . . is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test."[24] Still, the court found that for a dispute to qualify as an "actual controversy," certain elements are indispensable.[25] "[T]he question in each case," the court stated, "is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.[26]

Second, assuming a case or controversy exists within the court's jurisdiction, the court must decide whether to exercise jurisdiction over the dispute.[27] Unlike the threshold jurisdictional question, this decision is discretionary, as made clear by the language of the Declaratory Judgment Act, which states that the court "*may* declare the rights . . . of any interested party."[28] Because the Estate's jurisdictional challenge is confined to the "actual controversy" requirement, this analysis focuses solely on that prong of the analysis.

---

[23]   *Aetna Life Ins. Co. of Harford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937).

[24]   *Maryland Cas.*, 312 U.S. at 273.

[25]   *Id*.

[26]   *Id*.

[27]   *Kearns*, 15 F.3d at 143-44.

[28]   28 U.S.C. § 2201(a).

The Estate argues that a justiciable controversy did not exist at the time Allstate filed its declaratory judgment action because: (1) the Estate never conceded it was liable for Fielder's injuries, nor claimed that Allstate had acted in bad faith; (2) Allstate's claim was based solely on allegations made by Fielder, the third-party claimant, to which Allstate had no contractual relationship and, thus, owed no duty of good faith and fair dealing; and (3) there was never a dispute between Allstate and its insured over Allstate's obligation to defend or indemnify the Estate in the state tort action.

Allstate responds that its suit presented a justiciable controversy based on a "concrete record, ripe for judicial review, and not 'hypothetical' in nature." Allstate further asserts that the declaratory judgment action was justified because it achieved the "classic" purpose that this form of relief is designed to achieve – namely, clarifying legal obligations and encouraging resolution of the dispute. As noted above, the only facts alleged in Allstate's complaint that appear to support its request for declaratory relief are contained in the following paragraph, which the Estate initially admitted but later amended its answer to deny. That paragraph states that:

> [T]he Estate of Julie Menerey and Sally Fielder have prepared and will arrange for the Estate to confess judgment and assign any claims it has against Allstate. Such an arrangement would deprive Allstate of the right to defend the [E]state and would eliminate the opportunity for a jury to determine the liability and damage issues in the context of the tort complaint.

In its response to the Estate's pending motion to dismiss, Allstate reiterates the confession-of-judgment theory as a basis for its action. As evidence in support of this alleged controversy, Allstate cites Fielder's refusal to accept the all-claims release sought by Allstate during the parties'

11

negotiations and a letter from Fielder's attorney, sent after negotiations had broken down, stating that "no further offers within policy limits would be made or considered."

Even assuming this evidence supported the existence of a justiciable controversy, Allstate's concern over a possible claim accusing it of breaching its duty of good faith and fair dealing fails, as a matter of law, to establish subject-matter jurisdiction with regard to Fielder. This is because under Alaska law, the only good-faith duty that an insurer owes is to its own insured – not a third-party tort claimant. In *O.K. Lumber Co., Inc. v. Providence Washington Insurance Co.*, the Alaska Supreme Court held that "[a]ny obligation to deal with settlement offers in good faith runs only to the insured" because the duty is a product of the "fiduciary relationship created by the contract between the insurer and its insured."[29] Thus, a dispute over whether Allstate breached its good-faith duty in negotiating with Fielder must involve the Estate, the only party capable of bringing such a claim.

In its response to the Estate's motion to dismiss, Allstate suggests an actual controversy as to whether Allstate had fulfilled its obligations to the Estate and whether Libbey, as the Estate's personal representative, would bring a claim for breach of the good-faith duty or assign the right to bring that claim to Fielder. As stated earlier, subject-matter jurisdiction is ordinarily determined as of the complaint's filing date. Yet Allstate attempts to establish subject matter jurisdiction by citing actions taken by the Estate *after* the complaint was filed. In particular, Allstate cites language "lined out" by the Estate's attorney in a stipulation sought by Allstate after the Estate

---

[29] 759 P.2d 523, 526 (Alaska, 1988)

sought to have the declaratory judgment action stayed until the state tort action was resolved. The "lined out" language provided that:

> This stipulation and motion to stay is entered into by Allstate in reliance on the Estate's stipulation herein that it will not enter into any agreement to assign rights or assign claims from the estate of Julie Menerey to Sally Fielder or Amy Menerey or enter into any confession of judgment or consent judgment in the underlying tort case. As evidenced by this stipulation, it is the express intention of the Estate to allow Allstate to defend the Estate in the consolidated tort action . . .

As further evidence of an alleged bad-faith dispute involving the Estate, Allstate cites the following paragraph from the Estate's March 2005 memo in opposition to Allstate's Rule 12(b)(6) motion seeking to dismiss Allstate's counterclaims:

> [A]ccording to Allstate, if Libbey would simply agree that the insurer did nothing wrong in handling the Fielder claim, he would incur no costs or fees in the federal lawsuit. This, of course, is an absurd demand by an insurer in view of the fact that Libbey has no access to Allstate's internal records concerning the Fielder claim, and thus, is ignorant about the insurance company's key decisions. It is clearly unreasonable to think that Libbey should now give blanket approval of Allstate's conduct when Fielder is claiming that the insurer rejected her policy limits demand in 2003.

This passage, Allstate suggests, shows that the "Estate [had] joined Sally Fielder in speculating that Allstate's exposure exceeded the policy limits."

Assuming *arguendo* that this evidence is relevant to an assessment of subject-matter jurisdiction, the Court finds that it does not show that a controversy was ripe and, hence, that subject matter jurisdiction existed under the Declaratory Judgment Act. The Estate's refusal to accept Allstate's proposed stipulation does not, on its own, suggest that the Estate planned to confess

judgment or assign its rights or claims to Fielder or bring a bad-faith claim against Allstate. Nor does it support an inference that the Estate planned to interfere with Allstate's defense of the Estate against Fielder's tort claim. Rather, the Estate's refusal to accept Allstate's stipulation merely indicates, as the Estate argues, that it wanted to preserve its rights in the absence of knowledge about Allstate's decisions in the Fielder case. Likewise, the language excerpted from the Estate's March 2005 pleading fails to establish a justiciable controversy between Allstate and the Estate. Allstate asserts that the underlined portion shows that the "Estate [had] joined Sally Fielder in speculating that Allstate's exposure exceeded the policy limits." Even if this is true, mere speculation does not give rise to an actual or substantial controversy. Nor does the underlined sentence allege new facts on which subject matter jurisdiction could be based; it is undisputed that Allstate rejected Fielder's policy limits demand based on Fielder's revisions to Allstate's proposed blanket release of all claims. In sum, Allstate has failed to establish that a justiciable controversy existed between Allstate and the Estate over the duty of good faith and fair dealing each party owed to the other as part of their contractual relationship.

In response to the Estate's pending motion to dismiss, Allstate suggests that the actual controversy centered not only on the threat of a bad-faith allegation, but also on the need to clearly define the scope of Allstate's duty to indemnify the Estate. Again, nothing in Allstate's complaint suggests that the insurer was at odds with its insured over the scope of its duty to defend or indemnify the Estate. Indeed, Allstate admitted in its complaint that it was defending the Estate in the tort action, and it continued to do so without a reservation of rights. In support of its theory, Allstate relies on the same pleadings and attachments cited above – the Estate's March 2005 memo

14

in opposition to Allstate's Rule 12(b)(6) motion and the Estate's refusal to accept the stipulation proposed by Allstate after the Estate sought a stay of the declaratory judgment action. Allstate argues that "[b]ecause the Estate would not acknowledge Allstate's policy limits were effective, and the Estate would not commit to a resolution of Fielder's tort claims through a jury trial, the controversy continued." Contrary to Allstate's assertion, neither the March 2005 pleading nor the Estate's refusal to adopt Allstate's stipulation suggest that the Estate refused to "commit to a resolution of Fielder's tort claims through a jury trial . . . " While it is true that Fielder's attorney had written to the Estate in May 2004 offering to settle for a confession of judgment and assignment of claims, there is no evidence the Estate accepted this offer or entered into negotiations with Fielder. To the contrary, in an affidavit dated April 6, 2005, Libbey swore that as the personal representative of the Estate he had not "tak[en] steps to confess judgment and assign claims against Allstate." In sum, there is simply no indication the Estate was at odds with Allstate over the scope of Allstate's duty to indemnify or defend. Any alleged controversy over exposure to claims beyond the Estate's policy limits was purely speculative when Allstate filed its complaint seeking declaratory relief.

      Beyond the evidence in this case, Allstate argues that United States Supreme Court and Ninth Circuit case law validate the use of declaratory judgment actions by insurers to clarify the scope of indemnity and minimize tort litigation. Allstate notes, too, that federal courts have allowed such actions to be brought before related tort actions in state courts were resolved. This is true. But the alleged controversy at issue here differs sharply from the cases cited in Allstate's response to the Estate's motion. Unlike the alleged dispute at issue here, the cited cases all center on disputes between insurance companies and their insureds over the interpretation of language in the policy or

the existence of a fact crucial to the determination of whether the policy applies. For example, in *Maryland Casualty Co.*, the Supreme Court found that an "actual controversy" existed in a dispute between an insurance company and its insured over whether a vehicle driven by the insured's employee at the time of a collision had been "hired by the insured" or sold to the employee by the insured on a conditional sales contract.[30] If the vehicle had been "hired by the insured," then the insurer was liable to defend. The court found that the complaint presented an adequate controversy, in part, because the employee had filed a suit in state court seeking a judgment against its employer, the insurer.[31] Similarly, in *National Chiropractic Mutual Insurance Co. v. Doe*, the district court exercised jurisdiction over a declaratory judgment action brought by an insurer to determine whether it was obliged to indemnify or pay damages on behalf of a chiropractor sued in state court for an alleged sexual assault.[32] National had undertaken a defense of the chiropractor in state court, but after two years sought a declaration that it had no obligation to indemnify or pay damages on behalf because the chiropractor's alleged conduct was beyond the scope of the professional liability policy issued by National. Likewise, the Ninth Circuit in *American States Insurance Co. v. Kearns* found that there was a "case or controversy" when American States brought a declaratory judgment action to resolve whether it had a duty to defend or indemnify Kearns, who was doing business as Tahoe Boat Company, in a state court action.[33] American States had undertaken a defense of Tahoe Boat

---

[30] *Maryland Cas.*, 312 U.S. 271-73.

[31] *Id.* at 273.

[32] 23 F.Supp.2d 1109, 1114 (D. Alaska 1998).

[33] 15 F.3d at 144.

16

in state court, with a full reservation of rights, before bringing its declaratory judgment action in federal court. In each of these cases, the insurer was directly at odds with the insured party over its obligation to defend or indemnify, and in each case the dispute hinged on the insured party's alleged conduct and whether the alleged conduct was covered by the policy issued by the insurer. By contrast, Allstate and the Estate have never taken adverse positions with respect to their obligations under the auto insurance contract. Allstate has not disputed its duty to defend or indemnify the Estate in the tort action. Rather, Allstate brought the action to shield itself from the possibility of a claim that it had breached its duty of good faith and fair dealing by failing to reach a settlement with Fielder. But Allstate has failed to establish that the Estate ever made such an accusation, or planned to bring such a claim.

Based on relevant case law and the record in this case, this Court finds that Allstate has failed to establish that a "substantial controversy" existed between parties having "adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment"[34] Because of this, the issues presented were not ripe for review and, thus, the Court lacks subject matter jurisdiction over Allstate's declaratory judgment action.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS the Estate's motion to dismiss at Docket 110. The Court also DENIES as moot Allstate's motion to dismiss claims against the Estate at Docket 115.

---

[34] *Maryland Cas.*, 312 U.S. at 273.

Dated this 15th day of October, 2007.

/s/ Timothy Burgess
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE