Alfred Clayton, Jr.
Bliss, Wilkens & Clayton
500 L Street, Suite 200
Anchorage, AK 99501
Telephone:  (907) 276-2999
Facsimile:  (907) 276-2956
E-mail:  atc@bwclawyers.com

Attorneys for Plaintiff
     Allstate Indemnity Company

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| ALLSTATE INDEMNITY COMPANY, )<br>an Illinois Corporation,     )<br>                              )<br>          Plaintiff,         )<br>                              )<br>    v.                        )<br>                              )<br>SALLY FIELDER, and DANIEL E.  )<br>LIBBEY, as personal           )<br>representative of the ESTATE  )<br>OF JULIE MENEREY,             )<br>                              )<br>          Defendants.         )<br>_____) | Case No. 3:04-CV-246-TMB<br><br>**MEMORANDUM SUPPORTING**<br>**ALLSTATE'S MOTION FOR**<br>**RECONSIDERATION OF ORDER**<br>**AT DOCKET 133** |

By refusing to consider any release of Allstate's insured after February 27, 2003, unless Allstate paid damages in excess of the policy limit, Sally Fielder sought to place Allstate in a dilemma.  On the one hand, Allstate could assume its November 27, 2002 settlement offer to Sally Fielder had fulfilled its duty of good faith and fair dealing.  Also, Allstate could assume it was correct in refusing Sally Fielder's inadequate "release" of the Estate of Julie Menerey, Allstate's insured.  But if Allstate was wrong, Allstate risked the consequences of an excess judgment in

the tort case against its insured.  Meanwhile, as long as Sally Fielder refused to release Allstate's insured, the Estate remained exposed to liability and embroiled in litigation.

Sally Fielder gambled that these risks, costs, and uncertainties would coerce Allstate into paying in excess of the policy limit to finally resolve Sally Fielder's tort claims against the Estate.  This coercive scheme to pressure Allstate to pay in excess of the policy limit was a classic controversy ripe for declaratory relief.  MedImmune, Inc. v. Genentech, Inc., 127 S.Ct. 764, 771 (2007) (when a party is coerced into choosing whether to abandon its rights or risk imminent risk of harm, this is "a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.")  None of the reasons the order at Docket 133 relies upon to reverse Judge Singleton's carefully reasoned order at Docket 42 support dismissing Allstate's claims for lack of subject matter jurisdiction.

I.  It does not follow that just because Sally Fielder, a stranger to the insurance contract, lacked standing to initiate a lawsuit against Allstate, that Allstate lacked a sufficient interest in joining its insured and the injured third party in a single action to resolve the controversy over whether Allstate's limits had been "opened up."  See Docket 133 at page 12.  Allstate need not have privity with Sally Fielder to be the subject of coercion by Fielder or at risk of an excess verdict following Fielder's refusal to fully release the Estate.  See, e.g., Md. Cas.

Memorandum in Support of Allstate's Motion
For Reconsideration of Order at Docket 133      Allstate v. Fielder, et al.
Page 2 of 5                                              3:04-CV-246-TMB

Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 271 and 273, 61 S.Ct. 510 (1941) (declaratory judgment jurisdiction triggered even though the collision-victim defendant had not yet obtained any judgment entitling that claimant to direct relief); SanDisk Corp. v. STMicroectronics, Inc., 480 F.3d 1372, 1383 (C.A.Fed. 2007) (Md. Cas. stands for the rule that jurisdiction can arise "even though the injured defendant could not have sued the declaratory judgment plaintiff"); Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239, 57 S.Ct. 461 (1937) (declaratory judgment jurisdiction triggered even though the very reason the insurer sought declaratory relief was that the insured had given no indication that he would file suit). See also MedImmune, 127 S.Ct. at 774 n. 11.

  II.  It does not follow that to the extent the Estate "refused to take a position," that Allstate has somehow failed to state a controversy.  See Docket 133 at 14-15.  See Haworth, 300 U.S. at 244 ("It is the nature of the controversy, not the method of its presentation or the particular party who presents it, that is determinative.")  Declaratory judgment actions often involve "an unwilling litigant."  Rhone-Poulenc v. GAF Chemicals, 1993 WL 125512 *3 (Del.Ch. 1993).  Nevertheless, joinder is necessary for certainty and complete relief.  Martin v. Wilks, 490 U.S. 755, 763, 765, 109 S.Ct. 2180 (1989) ("[j]oinder as a party . . . is the method by which potential parties . . . are bound by a judgment"); Md. Cas. Co., 312 U.S. at 274 (injured third party a proper party to insurer's declaratory judgment action against the insured

Memorandum in Support of Allstate's Motion
For Reconsideration of Order at Docket 133  Allstate v. Fielder, et al.
Page 3 of 5  3:04-CV-246-TMB

because otherwise the possibility existed of inconsistent results); National American Ins. Co. v. Breaux, 368 F.Supp.2d 604, 620-621 (E.D.Tex. 2005) (injured persons are proper parties to insurer's declaratory judgment and subject to res judicata, even though those injured parties could not have sued the insurer directly).

 III. The discussion at pages 7-8 of Docket 133 does not honor the Ninth Circuit standard that prior decisions by a predecessor judge should be followed absent clear error and manifest injustice. See id. at pages 7-8.

 IV. Docket 133 at 11 incorrectly assumed that the "only facts" supporting the controversy was the threat of a consent judgment. Contra Docket 42 at 6 and 10. On the contrary, at the time the complaint was filed, Sally Fielder declared that no further offers to resolve the Estate's liability would be considered within policy limits. See Allstate's Complaint at paragraph 21 and Exhibit 14 to Fielder's Answer. Docket 42 at 13. Whether Allstate's position regarding the modifications to the Fielder "release" had opened up the policy limits was a "ripe" issue, constituting a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Md. Cas. Co., 312 U.S. at 273. Moreover, as long as Fielder refused to settle the tort claims for policy limits based upon her misconception of proper release language, the Estate remained embroiled in litigation and Allstate had ongoing defense costs.

Memorandum in Support of Allstate's Motion
For Reconsideration of Order at Docket 133　　　*Allstate v. Fielder, et al.*
Page 4 of 5　　　3:04-CV-246-TMB

V. Docket 133 overstates the significance of the Estate's withdrawal of its judicial admission that Allstate was threatened with a consent judgment. Docket 133, page 15, assumes that after allowing the Estate to amend its answer, "no evidence" exists that Allstate justifiably believed in a risk of a consent judgment. This ignores Allstate's April 26, 2005 citation to <u>Huey v. Honeywell</u>, 82 F.3d 327, 333 (9th Cir. 1996) (a withdrawn admission still remains "a statement once seriously made" and may be considered).[1]

DATED this 22nd day of October, 2007, at Anchorage, Alaska.

By: <u>s/Alfred Clayton, Jr.</u>

BLISS, WILKENS & CLAYTON
Counsel for Plaintiff
Allstate Indemnity Company
500 L Street, Suite 200
Anchorage, AK  99501
E-mail: <u>atc@bwclawyers.com</u>
Phone: (907) 276-2999
Fax:   (907) 276-2956
[ABA No. 9111079]

**CERTIFICATE OF SERVICE**

I hereby certify that on 10/22/07, a copy
of the foregoing was served electronically on:

**Eric Sanders**

**Dennis M. Mestas**

<u>**s/Alfred Clayton, Jr.**</u>

N:\ASM\854\451\PLDG\RECONSIDER.MTN.memo.doc

---

[1] The Estate only moved to amend its answer after Allstate relied on the admission. <u>See</u> Dockets 22, 25.

Memorandum in Support of Allstate's Motion
For Reconsideration of Order at Docket 133        *Allstate v. Fielder, et al.*
Page 5 of 5                                        3:04-CV-246-TMB